IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KELLY E. WINGATE, JR.,
    Petitioner,

v.                                    Case No.  3:09cv10/WS/CJK

EDWIN G. BUSS,[1]
    Respondent.
_____

ORDER and
REPORT AND RECOMMENDATION

    Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 15).  Petitioner has replied.  (Doc. 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the court show

---

[1]Edwin G. Buss succeeded Walter A. McNeil as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed. R. Civ. P. 25(d).

that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

By Information filed on August 31, 2006, petitioner was charged in the Circuit Court for Walton County, Florida, Case No. 06-CF-607, with trafficking in methamphetamine, 28 grams or more but less than 200 grams (Count One) and possession of drug paraphernalia (Count Two). (Doc. 15, Ex. A).[2] The offenses were alleged to have occurred on December 26, 2005. (*Id.*). Also on August 31, 2006, petitioner was charged in a separate case, Walton County Circuit Court Case No. 06-CF-608, with trafficking in methamphetamine, 28 grams or more but less than 200 grams (Count One) and possession of drug paraphernalia (Count Two). Those offenses were alleged to have occurred on December 27, 2005. (Ex. B).

Petitioner executed a written plea agreement with the State on November 28, 2006. The terms of the agreement provided: (1) petitioner would plead nolo contendere to Counts 1 and 2 as charged in Case No. 06-CF-607; (2) petitioner would be adjudicated guilty of those charges; (3) the State would recommend petitioner be sentenced on Count 1 to a mandatory minimum of seven years incarceration, and on Count 2 to time served; and (4) the State would "nol pros" both counts charged in Case No. 06-CF-608. (Doc. 15, Ex. C). At a proceeding held November 28, 2006, petitioner entered pleas of no contest to the charges in Case No. 06-CF-607, and was sentenced in accordance with the terms of the plea agreement. (Ex. D). On November 29, 2006, the State filed "*Nolle Prosequi*" for Case No. 06-CF-608. (Ex.

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 15, unless otherwise noted.

*Case No: 3:09cv10/WS/CJK*

E). Written judgment and sentence in Case No. 06-CF-607 was rendered December 11, 2006. (Ex. F). Petitioner did not directly appeal the judgment.

On January 10, 2007, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (ex. H), which he later amended (ex. L). The postconviction motion raised two ineffective assistance of counsel claims – that trial counsel was ineffective for advising petitioner to plead no contest without first filing a motion to dismiss the charges on the basis of res judicata, collateral estoppel and judicial estoppel (Ground One), and that counsel was ineffective for failing to file a motion to suppress evidence obtained as a result of statements made by his wife (Ground Two). (Exs. H, L). The trial court denied relief summarily by order rendered April 15, 2008. (Ex. M). The appellate court affirmed without written opinion. *Wingate v. State*, 992 So. 2d 260 (Fla. 1st DCA 2008) (Table) (copy at Ex. Q). The mandate issued December 22, 2008. (*Id.*).

Petitioner filed this *pro se* habeas corpus petition on January 7, 2009. (Doc. 1). He challenges his conviction on one ground – that trial counsel was ineffective for advising him to plead no contest without first moving to dismiss the charges on grounds of res judicata, collateral estoppel and judicial estoppel. (*Id.*). Respondent concedes the petition is timely. (Doc. 15, p. 6).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>   (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and–except as to the footnote–Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. To pass muster, the state court decision need not cite to the Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Only if the state court decision is contrary to clearly established federal law, must the federal habeas court independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must next determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652,

124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington*, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See Harrington*, 131 S. Ct. at 786; *see also Gill*, 633

F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the Supreme Court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding"). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and

convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(2) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011). However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858. The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Within this framework, the court will review petitioner's claim.

## ANALYSIS

Petitioner alleges that the evidence against him as to the convictions he now challenges, Circuit Court Case Nos. 06-CF-607 and 06-CF-608 ("the '06 Cases"), derived from the same stop, search and seizure found to be illegal in a prior criminal prosecution against him in Walton County Circuit Court Case No. 05-CF-1034. Petitioner argues that because the charges in Case No. 05-CF-1304 were dismissed

upon the State's stipulation after petitioner's uncontested motion to suppress was granted, he had a "right" to dismissal of the charges in the '06 Cases. He claims counsel had a duty to inform him that he could seek dismissal on the basis of res judicata, collateral estoppel and judicial estoppel, and that counsel's failure to do so rendered petitioner's pleas "unknowing, unintelligent, and involuntarily entered." (Doc. 1, p. 4).

    A.    Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a nolo contendere plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L.Ed. 347 (1926). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

When a petitioner challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances." *See Strickland*, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. In a plea situation, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L. Ed. 2d 763 (1970)). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the *Strickland* standard in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id*. at 59–60. While counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59.

    B.    Federal Review of State Court Decision

After citing the *Strickland* standard, the Rule 3.850 court denied relief concluding, among other things, that because petitioner's prosecution in the '06 Cases was not barred by res judicata, collateral estoppel, or judicial estoppel, counsel's failure to pursue dismissal on those bases (or failure to advise petitioner that that was a viable strategy) prior to advising petitioner to plead no contest could not constitute ineffective assistance of counsel. The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts. Therefore, the "contrary to" prong of the AEDPA standard is not implicated. Petitioner fails to meet the "unreasonable application" prong of § 2254(d)(1), because, given the state court's factual findings, which are amply supported by the record, a reasonable attorney could have determined that a motion to dismiss upon petitioner's proposed bases was not available.

Res judicata, or claim preclusion, "applies only to a second suit between the same parties based on the same cause of action." *State v. Carter*, 452 So.2d 1137, 1130 (Fla 5th DCA 1984); *see New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim."). "Collateral estoppel, or . . . issue preclusion, 'means simply that, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v Farley*, 510 U.S. 222, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 1194, 25 L. Ed. 2d 469 (1970)); *see also New Hampshire*, 532 U.S. at 748-49 (" Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.") (citation omitted). Finally, as to judicial estoppel, that doctrine is a discretionary remedy courts may invoke "to prevent the perversion of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000); *see also Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed,

assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire*, 532 U.S. at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

In denying relief, the state court took judicial notice of Case No. 05-CF-1034, and issued detailed findings of fact, the most relevant of which are repeated here:

> In case 05CF001034, on January 11, 2006, the State **originally charged** Defendant with two offenses: *possession of methamphetamine* and *possession of drug paraphernalia*. The evidence underlying said charges allegedly was located on the Defendant's person during a traffic stop of the vehicle that he was driving on December 26, 2005. (*See Exhibit "E" to Rule 3.850 Motion* – copy of Information; and *Exhibit "H" to Rule 3.850 Motion* – copy of narrative/probable cause affidavit).
>
> . . . .
>
> The Defendant . . . incorrectly assumes that a dismissal of his case 05CF1034 would prohibit the State from prosecuting him on cases 06CF607 & 06CF608. The record shows that the offenses for which the Defendant was charged in cases 06CF607 & 06CF608 are separate and apart from the offenses charged in case 05CF1034. Furthermore, the evidence gathered in relation to the offenses charged in the two '06 cases is different from the evidence gathered and subsequently suppressed in case 05CF1034.
>
> As noted above, the State originally charged Defendant [in Case 05CF1034] on January 11, 2006 with two offenses with related evidence allegedly located on Defendant's person during a traffic stop on December 26, 2005. (See *Exhibits "E" & "H" to Rule 3.850 Motion*). Defendant was the driver and only occupant in the vehicle during the traffic stop. On May 2, 2006, upon Defendant's motion and stipulation with the State, the Court dismissed those charges.

During the traffic stop of Defendant, he told Deputy Johnson that he was waiting on his wife, Sandra Wingate, to get off work. Subsequently, it was discovered that Sandra Wingate had an outstanding warrant for her arrest. Another deputy went to Sandra Wingate's place of employment and arrested her or the outstanding warrant. Subsequent to her arrest, Sandra Wingate was found to be in possession of what was alleged to be methamphetamine.

After arresting Sandra Wingate and advising her of her *Miranda* warning, Sandra Wingate admitted that she and the Defendant were cooking methamphetamine. Both Sandra Wingate and the Defendant signed consent to search forms for their residence at 1052 Eagles Way, DeFuniak Springs, FL 32433. (*See* copies at Exhibit H to Rule 3.850 Motion).

Both Sandra Wingate and the Defendant admitted to cooking methamphetamine in a camper behind the Defendant's mother's residence at 289 Hinote Road in Walton County, Florida. Narcotics investigators with the Walton County Sheriff's Office applied for and obtained a signed search warrant for the camper located at 289 Hinote Road in Walton County, Florida. (*See* copy at Exhibits H to Rule 3.850 Motion). Evidence located at each of the two locations was collected and several items were sent to the Florida Department of Law Enforcement (FDLE) Lab for testing. Two FDLE lab reports were completed on July 13, 2006. These lab reports represented the results of chemical analysis of the evidence collected at the separate locations. The lab results indicated that over 200 grams of methamphetamine or a mixture containing methamphetamine was located during the search at 1052 Eagles Way, DeFuniak Springs, Florida 32433.

On August 2, 2006, the Walton County Sheriff's Office requested approval of two warrants for the Defendant, and two warrants for Sandra Wingate for two separate charges of trafficking in methamphetamine each. The State approved the four warrants on August 2, 2006 and they were forwarded to a judge for review. Both Sandra Wingate and the

Defendant were subsequently arrested for the above-mentioned charges. On August 31, 2006, the State filed two separate informations charging the Defendant with two separate charges of trafficking in methamphetamine and possession of drug paraphernalia. These charges pertained to evidence located at the above-mentioned two separate locations on December 26, 2005 and December 27, 2005. (*See* copies of the information and narrative/probable cause report at Exhibits A, B & H to defendant's Rule 3.850 Motion). Deputies and investigators were led to these two locations by statements made by Sandra Wingate.

The State's filing of the two new informations on August 31, 2006 represented two new offenses separate from the earlier traffic stop and the evidence collected from said stop on December 26, 2005. These new/subsequent charges were based on information discovered as a result of the outstanding warrant arrest of Sandra Wingate, the statements that Sandra Wingate made subsequent to her arrest, and the subsequent statements made by the Defendant. The record conclusively shows that the two trafficking in methamphetamine charges were the result of offenses committed independently of the traffic stop of the Defendant.

The evidence collected at the two separate aforementioned locations on December 26, 2005 and December 27, 2005 was not the "fruit" of an illegal traffic stop. The Defendant is attempting to apply a "but for" test. In other words, "but for" the deputies stopping Defendant on December 26, 2005, law enforcement authorities would not have run his wife's name through their computer and discovered that she had a warrant for her arrest. However, "evidence is not inadmissible as the fruit of a poisonous tree simply because it would not have come to light but for the illegal action of the police; the more apt question is whether, granting the establishment of the primary illegality, the evidence to which objection is made has been come at by exploitation of that illegality or instead by being sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)*.

In *United States v. Green, 111 F. 3d 515 (7th Cir. 1997)*, the United States Court of Appeals held that the discovery of an outstanding warrant for a passenger in a vehicle was an intervening circumstance that dissipated any taint caused by an illegal traffic stop. In *Green*, the officers conducted a traffic stop of a vehicle. During the traffic stop, one of the officers obtained the identification of the passenger and discovered that he had an outstanding warrant. The officers subsequently arrested the passenger and conducted a search of the vehicle and found cocaine and a gun. The Court determined that the traffic stop was illegal. The Court also recognized that "but for" the illegal traffic stop, the police would never have discovered the cocaine and the gun. The Court determined that due to the intervening circumstance, the defendant was not entitled to have the cocaine and gun suppressed.

The Supreme Court of Florida applied the *Green* analysis in its holding in *State v. Frierson, 926 So. 2d 1139 (Fla. 2006)*. The Supreme Court held that the existence of an outstanding warrant discovered in the course of an illegal traffic stop is an intervening circumstance which dissipates the taint of the illegal traffic stop. *See also Golphin v. State, 945 So. 2d 1174, 1190-1193 (Fla. 2006)* (applying *Frierson*). In *Frierson*, an officer conducted a traffic stop of a defendant and discovered that he had an outstanding warrant. After arresting the Defendant for the outstanding warrant, the officer searched Defendant's vehicle and discovered a firearm, which formed the basis of the charge. The Supreme Court found the traffic stop to be illegal, however, it reinstated the Defendant's conviction, finding that the discovery of the warrant was an intervening circumstance.

The facts in this case are similar to the facts in both *Green* and *Frierson*. A deputy conducted a traffic stop on the Defendant. Subsequent to the traffic stop, it was discovered that the Defendant's wife, Sandra Wingate had an outstanding warrant. Sandra Wingate was subsequently arrested and gave statements to law enforcement pertaining to both she and the Defendant cooking methamphetamine at

>two separate locations.  The discovery of the outstanding warrant for Sandra Wingate is an intervening circumstance that dissipates the taint of the illegal traffic stop of the Defendant.

(Ex. M, pp. 7-11) (italics and emphases in original).

Based on these findings, the state court concluded that counsel reasonably could have determined that Case No. 05-CF-1034 and the '06 Cases were not based on the same charges/offenses and therefore res judicata did not apply. Accordingly, counsel was not ineffective for advising petitioner to accept the plea offer without first seeking dismissal on that basis (or advising petitioner that res judicata was a viable basis for having the charges dismissed). The state court's decision was a reasonable application of *Hill* and *Strickland*.

The state court further concluded that counsel could reasonably have determined that the issues of fact and law resolved by suppression of the evidence in Case No. 05-CF-1034 were not determinative of the admissibility of the evidence underlying the '06 Cases; therefore, collateral estoppel did not apply. Accordingly, counsel was not ineffective for advising petitioner to accept the plea offer without first seeking dismissal on that basis (or advising petitioner that collateral estoppel provided a viable basis for having the charges dismissed). This decision, too, was a reasonable application of *Hill* and *Strickland*.

Finally, the state court concluded, essentially, that counsel could reasonably have determined that, the State's position in the '06 Cases was not contrary to its position in Case No. 05-CF-1034; therefore, judicial estoppel did not apply. Accordingly, counsel was not ineffective for advising petitioner to accept the plea offer without first seeking dismissal on that basis (or advising petitioner that judicial

estoppel provided a viable basis for having the charges dismissed). This decision was a reasonable application of *Hill* and *Strickland*.

Based on the foregoing, the Court concludes that the state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor was the state court's decision based on an unreasonable determination of the facts. Therefore, petitioner is not entitled to federal habeas relief.

A final point is worth noting. In petitioner's Rule 3.850 motion, he conceded that prior to entering his pleas, he was aware of the factual and legal bases of the omitted motion to dismiss and discussed the issues with counsel. (Ex. H, p. 6). He nonetheless argued that had he known "he could have filed a Motion to Dismiss the instant charges utilizing the prior agreed case and stipulations and this Honorable Court Judge's Order granting his motion to suppress and to dismiss, in conjunction with the preclusive and defensive doctrines of *judicial estoppel, res judicata* and *collateral estoppel*, he would not have entered the agreement with the state and insisted on the proper Motion to Dismiss being filed and litigated, and this Court would have been constitutionally required to grant it." (*Id*.). Based on petitioner's concession (ex. H, p. 6), his assertions in the written plea agreement (ex. C), and his sworn assertions during the plea colloquy that (1) trial counsel answered any questions petitioner had, (2) petitioner was satisfied with counsel's representation, (3) petitioner understood the rights he was giving up by entering his plea, and (4) petitioner did not have any questions, (ex. D), it was not unreasonable for the state court to reject petitioner's contention that his plea was not intelligent or knowing due

to counsel's failure to advise him on the judicial doctrines of finality he now raises. Petitioner's arguments to the contrary are unavailing.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Edwin G. Buss has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in State of Florida v. Kelly Wingate in the Circuit Court for Walton County, Florida, Case No. 06-CF-607, be DENIED, and the clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 18th day of July, 2011.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).